**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

GWENDOLYN MURPHY                                                PLAINTIFF

V.                            No. 4:25-CV-01026-BSM-ERE

SOCIAL SECURITY ADMINISTRATION,
COMMISSIONER                                                    DEFENDANT

<u>**RECOMMENDED DISPOSITION**</u>

This Recommended Disposition ("RD") has been sent to United States District Judge Brian S. Miller. You may file objections if you disagree with the findings and conclusions set out in the RD. Objections should be specific, include a factual or legal basis, and be filed within fourteen days. If you do not object, you risk waiving the right to appeal questions of fact.

**I.     Background**

On August 26, 2022, Ms. Gwendolyn Murphy filed an application for disability insurance benefits due to attention deficit disorder, obsessive compulsive disorder, depression, anxiety, degenerative disc disease, spinal stenosis, bone spurs, bulging discs in the back, neuropathy, temporomandibular joint dysfunction, diabetes, insomnia, hypertension, sleep apnea, obesity, chronic fatigue, diverticulosis, asthma, tendinosis, and radiculopathy. *Tr. 15, 211*. Her claim was denied initially and upon reconsideration. On August 8, 2024, an Administrative Law Judge ("ALJ") held a telephonic hearing, where the ALJ heard testimony from

1

Ms. Murphy and a vocational expert ("VE"). *Tr. 31–51*. The ALJ issued a decision on September 10, 2024, finding that Ms. Murphy was not disabled. *Tr. 15–25.* The Appeals Council denied her request for review, making the ALJ's decision the final decision of the Commissioner. *Tr. 1-3*.

Ms. Murphy, who was fifty-five years old at the time of the hearing, has a college degree and no past relevant work experience. *Tr. 23, 34.*

## II.   The ALJ's Decision[1]

The ALJ found that Ms. Murphy had not engaged in substantial gainful activity from her alleged onset date of September 15, 2021 through December 31, 2021, her date last insured. *Tr. 17*. The ALJ identified the following severe impairments: obesity, lumbar spine degenerative disc disease with radiculopathy, bilateral knee osteoarthritis, left hip bursitis, sleep apnea, diabetes mellitus, bilateral hand tendinitis, OCD, ADHD, anxiety, and depression. *Tr. 18*. The ALJ concluded that Ms. Murphy did not have an impairment or combination of impairments that met or equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

---

[1] The ALJ followed the required sequential analysis to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; and (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)-(g).

According to the ALJ, Ms. Murphy had the residual functional capacity ("RFC") to perform light work, with the following limitations: (1) standing and walking for no more than 4 hours; (2) occasional climbing of ramps or stairs; (3) no climbing ladders, ropes, or scaffolds; (4) occasional balancing, stooping, kneeling, crouching, and crawling; (5) frequent gross handling and fine fingering with the bilateral upper extremities; (6) occasional exposure to concentrated fumes, odors, gas, mists, environments with poor ventilation; (7) no work at unprotected heights or around dangerous moving machinery or hazards; (8) no driving; (9) can understand, remember, and carry out detailed but not complex instructions; (10) no work performed in a production-rate environment, such as assembly-line work; and (11) occasional interaction with the general public. *Tr. 20.*

Based on the VE's testimony, the ALJ found that a substantial number of potential jobs were available in the national economy that Ms. Murphy could perform, including merchandise marker, routing clerk, and mailroom clerk. *Tr. 24, 50.* Accordingly, the ALJ found that Ms. Murphy was not disabled. *Tr. 24*.

## III.   Discussion

### A.   Standard of Review

In this appeal, the Court must review the Commissioner's decision for legal error and determine whether the decision is supported by substantial evidence on the record as a whole. *Brown v. Colvin*, 825 F.3d 936, 939 (8th Cir. 2016) (citing

*Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010)). "Substantial evidence" in this context means "enough that a reasonable mind would find [the evidence] adequate to support the ALJ's decision." *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009) (citation omitted). In making this determination, the Court must consider not only evidence that supports the Commissioner's decision, but also evidence that supports a contrary outcome. *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015). The Court will not reverse the Commissioner's decision, however, "merely because substantial evidence exists for the opposite decision." *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (citation omitted).

### B. Ms. Murphy's Arguments for Reversal

Ms. Murphy argues that the Commissioner's decision is not supported by substantial evidence because the ALJ erred: (1) in failing to apply the between-level analysis; and (2) by not clarifying a conflict between the VE's testimony and the Dictionary of Occupational Titles. *Doc. 8*. After carefully reviewing the record as a whole, I recommend affirming the Commissioner's decision.

### C. Analysis

#### 1. The Between-Level Analysis

Ms. Murphy asserts that "the ALJ limited . . . Ms. Murphy to standing and walking for four hours total, placing her exertional capacity squarely between the sedentary and light exertional levels," because light jobs require "a good deal of

walking or standing." *Doc. 8 at 6*; Social Security Ruling ("SSR") 83-10. According to Ms. Murphy, the four-hour walking limitation resulted in a "standing and walking capacity" that fell "between two exertional levels" which required the ALJ "to evaluate the claimant's exertional capacity under the between-levels framework set forth in SSR 83-12." *Id.*

SSR 83-12 provides that, when a restriction places the exertional level somewhere between two exertional levels, the ALJ "will need to consult" with the VE. See SSR 83-12, 1983 WL 31253 at *2-3; *Esping v. Berryhill*, No. CV 17-872 FLN, 2018 WL 3383433, at *7 (D. Minn. July 11, 2018) ("SSR 83-12 informs the ALJ's decision, which provides that in situations where the exertional capacity is somewhere in the middle of two Grid Rules that the ALJ should consult with a vocational source.").

In response to the ALJ's hypothetical, the VE responded: "This is a less than full range of light [work] with only the four hours of standing and walking but, in my opinion, there are light jobs that require no more than four hours of standing and walking." *Tr. 50*. Additionally, if Ms. Murphy's lawyer believed the ALJ's testimony insufficiently addressed this issue, the lawyer could have questioned the VE about it. However, the lawyer had no follow-up questions or comments about the now alleged problems with the testimony. *Tr. 50-51*.

Consistent with the regulations, the ALJ consulted the VE, who testified that there were reduced-range light jobs that fell within the hypothetical. This argument does not support a finding of reversible error.

### 2. The Alleged Potential Conflict

Ms. Murphy also argues that the ALJ failed to obtain a sufficient explanation regarding the potential conflict between the RFC "limiting standing and walking to four hours" and "the exertional requirements of light work under the DOT." *Doc. 8*.

There is no conflict between the RFC's walking/standing restriction and light work, because the restriction simply puts the RFC in a reduced range of light work; it in no way excludes all light work. Similar arguments have been rejected repeatedly. *Belanger v. Comm'r of Soc. Sec.*, 620 F. Supp. 3d 416, 424 (W.D.N.C. 2022) (holding that "there was no conflict between light work and a limitation against standing for more than four hours in an eight-hour workday"); *Cordero v. Comm'r of Soc. Sec.*, No. CV 24-1321 (BJM), 2025 WL 865977, at *7 (D. P.R. Mar. 20, 2025) (same); *Ronald David H. v. Berryhill*, No. 18-2219-JWL, 2019 WL 1002048, at *14 (D. Kan. Mar. 1, 2019) (same); *Roybal v. Colvin*, No. EDCV 12-02198-JEM, 2013 WL 4768033, at *15 (C.D. Cal. Sept. 4, 2013) (same); *Bratton v. Astrue*, No. 2:06-0075, 2010 WL 2901856, at *4 (M.D. Tenn. July 19, 2010) (same). In fact, the regulations note that some light work "involves sitting most of the time." 20 C.F.R. § 404.1567.

Once again, if Ms. Murphy's lawyer thought that a potential conflict existed or that the VE needed to provide further explanation about how she reached her conclusions, the lawyer should have contemporaneously sought clarification on the issue. *Baker v. Social Sec. Admin. Comm'r*, No. 1:10–cv–00167–JAW, 2011 WL 1298694, at *5 (D. Me. Mar. 31, 2011) (If a claimant's attorney believes a conflict existed, the attorney should "explore these concerns with the vocational expert at the hearing, not leave such matters to technical challenges before the courts."). Notably, Ms. Murphy did not argue that the jobs the VE mentioned could not be performed with the four-hour standing and walking restriction.

Ms. Murphy has not demonstrated reversible error on this record.

## IV.    Conclusion

As set out above, the ALJ applied proper legal standards in evaluating Ms. Murphy's claims, and substantial evidence supports the decision to deny benefits.

IT IS THEREFORE RECOMMENDED that the Court affirm the Commissioner's decision and enter judgment in favor of the Commissioner.

Dated 22 May 2026.

UNITED STATES MAGISTRATE JUDGE